UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KARISSA M. GARNER,

              Plaintiff,

          -against-                          ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                                        13-CV-5786 (CS)(LMS)
              Defendant.
-------------------------------------------------------------x

Seibel, J.

       Before the Court are Plaintiff's objections, (Doc. 26 ("Obj.")), to the Report and Recommendation of United States Magistrate Judge Lisa Margaret Smith, ("R&R"), (Doc. 25), recommending that Plaintiff's motion for judgment on the pleadings be denied and Defendant's motion for judgment on the pleadings be granted.

       A District Court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). "A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they [*sic*] object." *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352 (E.D.N.Y. 2009). If a party fails to object to a particular portion of a report and recommendation, further review thereof is generally precluded. *See Mario v. P & C Food Mkts.,*

*Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). The court must review *de novo* any portion of the report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "[W]hen a party makes only conclusory or general objections, or simply reiterates the original arguments made" below, a court will review the report only for clear error. *Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009). "Furthermore, [even] on *de novo* review, the Court generally does not consider arguments or evidence which could have been, but were not, presented to the Magistrate Judge." *United States v. Vega*, 386 F. Supp. 2d 161, 163 (W.D.N.Y. 2005).

The Court presumes the reader's familiarity with the record, the prior proceedings and the standards governing judicial review of decisions of the Commissioner of Social Security.

Medical Evidence

Plaintiff first objects that the Administrative Law Judge ("ALJ") failed to properly weigh the medical opinion evidence, in that he gave only limited weight to the views of Plaintiff's treating psychiatrist Dr. Singh. She argues that Judge Smith erred in noting that Dr. Singh's views were contradicted by a consultative psychologist, because the ALJ did not give any weight to that psychologist's report and the Court cannot affirm based on evidence that the Commissioner did not consider. (Obj. at 1-2.) The short response to this argument is that it is simply not true. The ALJ specifically noted the opinions of consulting psychologist Dr. Fujiwaki in the portion of his decision where he explained why he rejected Dr. Singh's conclusions in assessing Plaintiff's residual functional capacity ("RFC"). (AR at 64-67.)[1]

---

[1] "AR" refers to the administrative record, (Doc. 10).

Plaintiff further objects that Magistrate Judge Smith made an impermissible *post hoc* rationalization when she noted that Dr. Singh's opinions were inconsistent with the GAF scores he assigned – an observation the ALJ did not make. (Obj. at 2.)[2] The ALJ did, however, discuss that Dr. Singh's conclusions were belied by the details in his notes, (AR at 66), and the Magistrate Judge merely pointed to the fact that the relatively high GAF scores were one respect in which Dr. Singh's notes contradicted his opinion, (R&R at 20).

Citing *Daniel v. Astrue*, No. 10-CV-5397, 2012 WL 3537019, at *10 (E.D.N.Y. Aug. 14, 2012), Plaintiff argues that because GAF scores do not correlate to the regulatory framework for disability determinations, any alleged contradiction between the GAF score assigned by Dr. Singh and his ultimate conclusions are not relevant. (Obj. at 2.) In *Daniel*, the Court noted that because the GAF framework does not directly correlate to the severity requirements in Social Security Administration ("SSA") regulations, a GAF score of 55 did not contradict a doctor's ultimate finding of disability, and thus did not justify the ALJ giving no weight at all to the doctor's opinion. *See id.* at *10. But the *Daniel* Court found that it would have been permissible to not give controlling weight to that doctor's opinion, *see id.* at 8-9, which is what the ALJ did here and what the Magistrate Judge found to be appropriate. Neither the ALJ nor the Magistrate Judge found Dr. Singh to be incredible because he assigned Plaintiff a relatively high GAF score; rather, the Magistrate Judge merely noted that the GAF scores were an example of internal inconsistencies between Dr. Singh's records and his opinion that led the ALJ to properly give that opinion limited weight.

---

[2]"GAF" is short for Global Assessment of Functioning, which tests a person's overall mental health functioning on a 1-100 scale. (R&R at 3 & n.5.)

Plaintiff further argues that the facts that Plaintiff reported "feeling good" or that her treating social worker told her that patients with more severe mental illness did not get disability benefits did not mean that Plaintiff would be able to function in a work environment. (Obj. at 2-3.) But neither the ALJ nor the Magistrate Judge said any such thing. Those comments were simply among the factors mentioned as having been considered.

Next Plaintiff contends that the Magistrate Judge should not have cited the report from Dr. Fujiwaki and a report from a non-examining state medical consultant Dr. Harding as justifying the ALJ's decision regarding Plaintiff's RFC, because the ALJ did not do so. (*Id*. at 3-4.) As noted earlier, the ALJ specifically discussed Dr. Fujiwaki's report, (AR at 66), but Plaintiff is correct that the ALJ did not explicitly discuss Dr. Harding (noting only that he (the ALJ) had considered all of the evidence, (*id.* at 60)). Thus, the Magistrate Judge erred to the extent she relied on Dr. Harding's opinion as justifying the ALJ's conclusion. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) ("[T]his Court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (internal quotation marks omitted) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency.")).

Reviewing the matter *de novo*, however, without considering Dr. Harding, I find that the ALJ's RFC determination is supported by substantial evidence. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (internal quotation marks omitted). The ALJ pointed to Plaintiff's own reports of her mental status, as reflected in her providers' records; the inconsistency between Dr. Singh's records and his

4

opinion; the records of Plaintiff's other providers; Dr. Fujiwaka's opinion; Plaintiff's ability to volunteer at her son's school, socialize with other mothers, and attend exercise classes; and Plaintiff's domestic situation, which reflected an apparent desire to withdraw from an unsatisfactory relationship with a man on whom she depended financially while continuing to be a stay-at-home mother and further her education. (AR at 64-67). These all pointed to Plaintiff's being able to work despite her mental health challenges and provided sufficient evidence for the ALJ's conclusions. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ need not "slavish[ly] recit[e] . . . each and every factor where the ALJ's reasoning and adherence to the regulation are clear," *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order), and need only provide "good reasons" when not affording controlling weight to a treating physician's opinion, *Selian v. Astrue*, 708 F.3d at 409, 419 (2d Cir. 2013). The decision here meets that standard.[3]

Credibility

Plaintiff next argues that because the ALJ did not cite Plaintiff's daily activities as a reason why Plaintiff's self-report of frequent panic attacks was not credible, the R&R should not

---

[3]For the same reasons, there is no merit to Plaintiff's argument that it is unclear on what "medical evidence, or even [] persuasive non-medical evidence" the ALJ relied. (Obj. at 5.) Dr. Singh's records, the records of other providers, and Dr. Fujiwaki's opinion are medical evidence, and there is nothing about the ALJ's discussion of the evidence that "frustrate[s] meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Plaintiff criticizes the ALJ for not providing a narrative discussion describing how specific medical facts and non-medical evidence support his conclusion, (Obj. at 5), but in his detailed discussion of how he arrived at his RFC decision, which occupied three-and-a-half single-spaced pages, (AR at 64-67), the ALJ did just that.

5

have done so. (Obj. at 65.) But it is clear that the Magistrate Judge mentioned Plaintiff's daily activities because the applicable regulation lists that factor as one to be evaluated in assessing credibility. (R&R at 24.) Further, in any event, the ALJ did mention Plaintiff's daily activities and the extent to which they were inconsistent with her testimony about disabling anxiety. (AR at 63-66.)

Nor did the ALJ conclude that Plaintiff was not disabled because she could manage activities of daily living. (Obj. at 6-7.) Rather, he found that her testimony grossly overstated the severity of her condition as documented in medical records that showed her panic attacks to be far less frequent than she represented and that she enjoyed substantial periods of no anxiety; that her claim of severe agoraphobia was inconsistent with her volunteering at her son's school, socializing with other mothers, and attending exercise class; and that her apparent motive for seeking disability payments was to remain at home with her son while extricating herself from an unhappy relationship. (AR at 63-67.) The ALJ did not conclude that Plaintiff did not suffer from anxiety, but rather concluded that the condition was not as severe as Plaintiff said. Further, while Plaintiff criticizes the ALJ for focusing on the panic attacks, they and the fear of leaving home were the only specific manifestations Dr. Singh described, and it was reasonable for the ALJ to question Plaintiff's credibility on the former when Dr. Singh's records showed the attacks to be far less frequent than Plaintiff said, and on the latter when she apparently regularly went out for volunteering, exercise and other things – activities inconsistent with the inability to report to a workplace.

<u>New Evidence</u>

Finally, Plaintiff argues that remand is required because the Appeals Council failed to consider the report from examining psychiatrist Dr. Eshkenazi. (Obj. at 7-8.) Where, as here, the

6

Appeals Council denies consideration of new evidence, the reviewing Court looks at the entire record, including the new evidence, in determining whether substantial evidence supports the administrative decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). A Court can order remand to consider new evidence where there is good cause for the failure to proffer it earlier, it is not cumulative, and it is material. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Evidence is material if it relates to the period for which benefits have been denied (as opposed to concerning a later-acquired condition or subsequent deterioration of a previously non-disabling condition) and if it gives rise to a reasonable possibility that it would have led to a different decision. *Id.*; *Cassera v. Sec'y of Health & Human Servs.*, 104 F.3d 355 (2d Cir. 1996) (summary order).

Here the Eshkenazi report does not undermine the conclusion that the ALJ's decision was supported by substantial evidence. It was based on a review of unspecified records provided to the doctor, so it is unclear if that was all the available information or just selected records provided by Plaintiff's counsel, but I will assume it was the former. The report provides remarkably little information. It is mostly a short summary of records, followed by a summary of a mental status examination, a diagnosis of "generalized anxiety with panic attacks," a "fair to good" prognosis, and a form questionnaire. (AR at 37-47.) To the extent this evaluation – which took place after Plaintiff's hearing before the ALJ – was based on Plaintiff's statements, the reasoning undermining Plaintiff's credibility at the hearing would apply equally to her credibility in providing information to Dr. Eshkanazi. And to the extent it was based on records, they were (presumably) the same ones already before the ALJ. I am mindful of my obligation to consider the evidence from both sides, *see Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (reviewing court considers whole record, examining evidence from both sides,

because "analysis of the substantiality of the evidence must also include that which detracts from its weight"), but find that – given the ALJ's reasonable reliance on Dr. Singh's inconsistencies, the other medical records, Dr. Fujiwaki and the other factors cited above in rejecting Dr. Singh's conclusion – adding Dr. Eshkenazi's opinion to the mix would not make the ALJ's conclusion one lacking substantial evidence.[4] In other words, notwithstanding Dr. Eshkanazi's contrary opinion, there remains substantial evidence underlying the ALJ's decision. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (internal quotation marks omitted).

For the same reasons that Dr. Eshkanazi's opinion adds too little to undermine the conclusion that substantial evidence supports the ALJ's decision, no purpose would be served by remand. Given the limitations of the report, there is no reasonable possibility that, if it were before the agency, the result would have been different.

Thus, for the reasons stated above, Petitioner's objections are overruled, except as to the consideration of Dr. Harding's report which, as discussed, does not undermine the ALJ's conclusion. I have reviewed the portions of the Petition as to which no objection has been raised, and find no error, clear or otherwise. Thus, with the exception just described, the R&R is adopted as the decision of the Court. Plaintiff's motion for judgment on the pleadings is DENIED, and

---

[4]Indeed, Dr. Eshkanazi's report does not say Plaintiff is disabled and provides a significantly rosier picture than Dr. Singh's, assigning Plaintiff a GAF score of 60-65. (AR at 40.) A GAF score of 61-70 denotes that the person experiences some mild symptoms or difficulties but overall "function[s] pretty well." (R&R at 8 n.11.)

Defendant's is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 11, 22), and close the case.

SO ORDERED.

Dated: June 5, 2017
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.